UNITED STATES DISTRICT COURT
Eastern District of Virginia
Newport News Division

UNITED STATES OF AMERICA

v.  Case Number: 4:14cr28

BRYAN SCOTT MCINTOSH
Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the Government's request for an Order of Restitution against Defendant Bryan Scott McIntosh ("Mr. McIntosh") pursuant to 18 U.S.C. § 2259. This Court held a restitution hearing on the matter on September 29, 2014.

For the reasons that follow, the Court hereby ORDERS Mr. McIntosh to pay restitution in the amount of $14,500.00 to the victim "Vicky."[1]

### I. Factual Background

On June 19, 2014, Mr. McIntosh pled guilty to one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(A)(a)(2). On September 12, 2014, this Court sentenced Mr. McIntosh to 120 months imprisonment, followed by fifteen years of supervised release. With the agreement of both parties, this Court reserved ruling on the issue of ordering restitution pending a separate restitution hearing.

---

1 This Court denies restitution as to "Cindy" and "Angela" because those victims are not named victims in the count of conviction. *See United States v. Benjamin Sanders*, 1:12-CR-373-WSD, 2014 WL 5033280, at *6 (N.D. Ga. October 9, 2014) (noting that to "be a victim entitled to restitution under § 2259(c) . . . [the party seeking restitution] had to be a victim of the crime of conviction") (citing *Hughey v. United States*, 495 U.S. 411, 413 (a sentencing judge can order restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction")).

1

The Government sought restitution for Vicky in the amount of $25,000.00. When Vicky was a young child (she is now an adult), she was subjected to sexual abuse by her biological father, who produced videos and images of Vicky's sexual abuse. In these videos and still images, he engaged in vaginal and anal intercourse and oral sex with her. He subjected her to bondage, including tying ropes to parts of her body and tying her to furniture. These pornographic images and videos of Vicky as a child are widely circulated across the Internet. *United States v. Hicks*, CRIM.A. 1:09-CR-150, 2009 WL 4110260, at *1 (E.D. Va. November 24, 2009).

The Government asserted that Mr. McIntosh possessed fifty-one picture images and ninety-eight videos of Vicky. Govt. Pos. on Restitution at 5. One of those images qualifies as sadistic, masochistic or other depictions of violence. *Id.* The images were on multiple devices possessed by Mr. McIntosh. His earliest known date of possession of an image of Vicky is November 6, 2009.

## II. Applicable Common Legal Principles

MANDATORY RESTITUTION

The Mandatory Restitution for Sexual Exploitation of Children Act ("the Restitution Act"), 18 U.S.C. § 2250, was enacted for the purpose of compensating victims of offenses involving the sexual exploitation of children in the "full amount of the victim's losses." *See, e.g., United States v. Burgess*, 684 F.3d 445, 455 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 490 (U.S. 2012) and *writ denied sub nom. Burgess v. Attorney Gen. of U.S.*, 2014 WL 1432042 (W.D.N.C. Apr. 14, 2014). The phrase "full amount of the victim's losses" is defined in the Restitution Act as "any costs incurred by the victim for"—

    (A) medical services relating to physical, psychiatric, or psychological care;
    (B) physical and occupational therapy or rehabilitation;

2

(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys' fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a *proximate result* of the offense.

*Id.* (emphasis in original) (citing 18 U.S.C. § 2259(b)(3)).

Under the Restitution Act, restitution is mandatory. 18 U.S.C. § 2259(b)(4). The Court may not decline to issue an order because of either the inability of a defendant to pay, or the fact that the victim has received, or is entitled to receive, compensation for his or her injuries from insurance proceeds or any other source. *Id.* Restitution is contingent on the Government's ability to prove, "by the preponderance of the evidence," "the amount of the loss sustained by a victim as a result of" the defendant's crime. 18 U.S.C. § 3664(e).

THE *PAROLINE* FRAMEWORK

The United States Supreme Court addressed restitution under the Restitution Act in a recent opinion. *Paroline v. United States*, 134 S. Ct. 1710 (2014). In that case, the defendant had pled guilty in federal court to possessing child pornography images. *See id.* at 1717. Two images were of a victim who sought restitution in the amount of almost $3.4 million dollars. *Id.* at 1717-18. Employing a "proximate cause" analysis, the Supreme Court concluded that restitution was proper. *See id.* at 1726-27.

The *Paroline* decision noted that the calculation of restitution "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id.* at 1728. The Supreme Court set forth non-exclusive factors for consideration in determining restitution. A summary of the *Paroline* framework follows:

- Determine the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding any remote losses)
- Set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These can include:
    o the number of past criminal defendants found to have contributed to the victim's

3

>   general losses;
> - reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;
> - any available and reasonably reliable estimate of the broader number of offenders involved (most of whom may never be caught or convicted);
> - whether the defendant reproduced or distributed images of the victim;
> - whether the defendant had any connection to the initial production of the images;
> - how many images of the victim the defendant possessed;
> - and other facts relevant to the defendant's relative causal role.

*See id.*

"These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id.*

Lower courts have begun applying the *Paroline* analysis. The Fourth Circuit Court of Appeals has not yet addressed this issue. To date, it appears that the only United States Court of Appeals to apply the *Paroline* framework in a written opinion is the First Circuit Court of Appeals. *See United States v. (Brian) Rogers*, 758 F.3d 37 (1st Cir. 2014). Therefore, this Court examines the opinions of District Courts across the country for persuasive guidance. These decisions are far from harmonious. The Supreme Court correctly noted that "[t]his approach is not without its difficulties." *Paroline*, 134 S. Ct. at 1729.

### III. Analysis

A. DETERMINATION OF RESTITUTION

Both the Government and Defendant filed position statements addressing restitution. The Government seeks an award of $25,000.00 in restitution to victim Vicky. In support, the Government asserts that "it is undisputed that" Mr. McIntosh "possessed images of Vicky," and that she has an outstanding loss caused by the continuing traffic in her images. Govt. Pos. Restitution at 3.

4

Multiple victim impact statements were submitted to the Court. Vicky stated that her "world came crashing down the day [that she] learned that pictures of [her] being sexually abused had been circulated on the [I]nternet." She further noted that the "enormity" of the widespread distribution of her images "added to [her] grief, and pain" and has given her "paranoia." In addition to describing the negative impact that the dissemination of her images has had on her, Vicky asserted that she has received emails from "perverts" seeking sexual acts. She also asserted that one of them has stalked her, while another has created a slideshow of her on the Internet. The Court also received psychological reports regarding Vicky's ongoing challenges, a chart detailing restitution awards in other cases involving Vicky, and other documents detailing Vicky's losses.

Mr. McIntosh argues that he should not have to pay restitution because there is no evidence that he proximately caused Vicky's losses. Def. Pos. Restitution at 4. He argues that because Vicky's pictures were taken in 2000-2001, her "victimization" occurred in 2001 and since that time she has done well. *Id.* Mr. McIntosh points out that Vicky is now married, completed college, and is attending graduate school. *Id.*

Mr. McIntosh also asserts that there is no evidence of distribution on his part, and that because the images are located "on-line," Vicky's losses can theoretically continue on "forever." *Id.* at 5-6. Mr. McIntosh argues that if the Court rejects the proximate cause argument, it should only attribute one picture of Vicky to him because he is convicted of a single offense. *Id.* at 5. Alternatively, Mr. McIntosh argues that if the Court rejects the "one image" argument, then the Government should be required to show the exact number of videos initially made and whether they were actually viewed by Mr. McIntosh. *Id.*

5

**Step 1: Determine the Conduct of the Defendant & Proximate Cause**

The first step in deciding whether to award restitution under the Restitution Act is to determine the conduct of a defendant and to determine whether the proximate cause requirement is met. *See Paroline*, 134 S. Ct. at 1720 (noting that the "central concern of the causal inquiry must be the conduct of the particular defendant for whom restitution is sought"). If a defendant's conduct is an offense covered by the Act, the Court must then assess the causal relationship between that conduct and the victim's harm. *See id.* at 1718-20. In *Paroline*, the defendant was convicted of knowingly possessing child pornography in violation of 18 U.S.C. § 2252, an offense involving "the sexual exploitation of children and child pornography[.]" *Id.* at 1718. Mr. McIntosh was convicted of receipt of child pornography in violation of a subsection of the same provision, 18 U.S.C. § 2252(A)(a)(2).

Despite Mr. McIntosh's arguments, the proximate cause requirement is met here, for the same reasons it was met in *Paroline*. "The Supreme Court summarized the proximate cause analysis with respect to claims of this sort:

> The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse—including Paroline—plays a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this. The law makes restitution "mandatory," § 2259(b)(4), for child-pornography offenses under Chapter 110, language that indicates Congress' clear intent that victims of child pornography be compensated by the perpetrators who contributed to their anguish. It would undermine this intent to apply the statute in a way that would render it a dead letter in child-pornography prosecutions of this type.
>
> Denying restitution in cases like this would also be at odds with the penological purposes of § 2259's mandatory restitution scheme. In a sense, every viewing of child pornography is a repetition of the victim's abuse. One reason to make restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims. It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime.

*Id.* at 1726-27 (citation omitted).

Because Mr. McIntosh received Vicky's images, he "play[ed] a part in sustaining and aggravating" the injury. *See id.* at 1726. It is "indisputable that [Mr. McIntosh] was a part of the overall phenomenon that caused [Vicky's] general losses." *See id.* Mr. McIntosh's allegation that the date of the victimization ended over a decade ago was expressly rejected in *Paroline*. *See id.* (noting that "every viewing of child pornography is a repetition of the victim's abuse").

The Fourth Circuit agrees with this rationale. In *Burgess*, the Fourth Circuit noted that "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 490 (U.S. 2012) (internal quotation marks omitted).[2]

The United States District Court for the District of Oregon addressed a similar argument after *Paroline* and found that proximate cause was met. *United States v. Galan*, 6:11-CR-60148-AA, 2014 WL 3474901 (D. Or. July 11, 2014). In that case the defendant argued that the evidence did not establish a necessary causal connection between his offense conduct and the requested restitution because the government "ma[de] no effort to attribute any amount" of the victim's losses "to the [underlying sexual] abuse itself, despite the likelihood that the vast majority of the harm was caused by the abuse and not the later viewing of images by child pornography offenders." *Id.* at 3. The District of Oregon disagreed and noted that "the knowledge that her images continue to be possessed and distributed renders [the victim]

---

2 Notably, although one central holding in *Paroline* gave courts a new workable framework for accessing the amount of restitution, the other central holding—that general proximate causation is a requirement for restitution in child pornography cases—was already the law in the Fourth Circuit. *See Burgess*, 684 F.3d at 459 (noting that the defendant "is only responsible for losses sustained by Vicky that he proximately caused").

7

vulnerable to 'the crippling effects of anxiety and depression,' causes her to 're-experience the full emotional impact of the past abuse in her current life,' and leads her to believe[] that 'she may never be able to escape from the cycle of repetitive abuse brought on by the ongoing use and sale of her sexual abuse photographs by pedophiles and other offenders on the internet.'" *Id.* at 6.

The Oregon court noted that "regardless of the underlying abuse she suffered, the continued trade in her images sustains and compounds the effects of that abuse, compromising her ability to manage the repercussion of her sexual abuse experiences." *Id.* (internal quotation marks and citation omitted).

Proof that Mr. McIntosh viewed the images and videos is not required. *See Paroline*, 134 S. Ct. at 1717. Mr. McIntosh argues that if this Court rejects his "one image" argument,[3] then the Government should be required to show the exact number of videos initially made and whether they were actually viewed by Mr. McIntosh. This argument is similarly foreclosed, and multiple District Courts have so found. "[T]he Court need not look further than the opening line of the *Paroline* opinion to reject this argument: [']This case presents the question of how to determine the amount of restitution a *possessor* of child pornography must pay to the victim whose childhood abuse appears in the *pornographic materials possessed*.[']" *United States v. Donald Steven Reynolds*, CRIM. 12-20843, 2014 WL 4187936, at *5 (E.D. Mich. August 22, 2014) (emphasis in original) (quoting *Paroline*, 134 S. Ct. at [1717]). For the foregoing reasons, this Court finds that the proximate cause requirement is met.

---

3 Mr. McIntosh's argument that this Court attribute only one image to him is foreclosed. Mr. McIntosh has provided the Court with no binding or persuasive authority to support his contention that only one image should be considered. He possessed dozens.

**Step 2: Amount of the Victim's Losses Caused by the Continuing Traffic in the Victim's Images (Optional)**

"There are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development." *Paroline*, 134 S. Ct. at 1728. "Doing so would unduly constrain the decisionmakers closest to the facts of any given case." *Id.* The Supreme Court noted that the District Courts "might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images[.]" *Id.*

This task has not been simple in practice. The United States District Court for the Eastern District of Michigan noted that "it is simply not possible for the Government to show, as a starting point, the amount of losses caused by the continuing trafficking in Cindy and Vicky's images." *Reynolds*, 2014 WL 4187936 at *6; *see also United States v. Miner*, 1:14-CR-33 MAD, 2014 WL 4816230, at *9 (N.D.N.Y. Sept. 25, 2014) (noting difficulty in applying the *Paroline* framework); *United States v. Crisostomi*, CR 12-166-M, 2014 WL 3510215, at *2 (D.R.I. July 16, 2014) (noting that "a number" of the *Paroline* factors are "virtually unknown and unknowable, regardless of the detail available in the record").

However, the Supreme Court emphasized that "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims." *Paroline*, 134 S. Ct. at 1728.

This Court received extensive documentation from Vicky's attorney documenting Vicky's full economic losses. These included $113,600.00 in future counseling expenses, $53,330.00 in educational and vocational counseling needs and lost part-time income during

schooling, $828,150.00 in lost earnings, and $87,100.51 in expenses paid in out-of-pocket costs incurred relative to restitution documentation, totaling $1,082,180.51 in future loss (not including attorney's fees). Vicky asserts that to date she has received $599,164.41 in restitution from other defendants, and the net amount of future economic loss is calculated to be $483,016.10. Vicky requested $152,500.00 from Mr. McIntosh. The Government seeks an award of $25,000.00 in restitution for Vicky. This Court has reviewed the entire record.[4]

**Step 3: Consideration of the Other Factors in *Paroline***

The *Paroline* decision teaches that courts should consider other factors "that bear on the relative causal significance of the defendant's conduct in producing those losses." *Paroline*, 134 S. Ct. at 1728. The Supreme Court provided a non-exclusive list of factors that District Courts "could" assess. *Id.* That list is: (a) the number of past criminal defendants found to have contributed to the victim's general losses; (b) reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; (c) any available and reasonably reliable estimate of the broader number of offenders involved (most of whom may never be caught or convicted); (d) whether the defendant reproduced or distributed images of the victim; (e) whether the defendant had any connection to the initial production of the images; (f) how many images of the victim the defendant possessed; and (g) other facts relevant to the defendant's relative causal role. *See id.*

---

[4] The Government also submitted a document entitled "Government's Memorandum Regarding Restitution." Govt.'s Exhibit D. This document was prepared by an Assistant United States Attorney for the Northern District of Texas, and it was submitted to the United States District Court for the Northern District of Texas – Dallas Division in a similar case (No. 3:13cr222). This Court took the document under advisement, but it did not consider it for the purposes of this Restitution Order.

*(a) The number of past criminal defendants found to have contributed to the victim's general losses*

Vicky has received over 500 restitution awards, and that number will grow. This factor supports a decrease in Vicky's recovery from Mr. McIntosh. *Cf. Crisotomi*, 2014 WL 3510215, at *3 (dividing Vicky's total losses by 1,000, the number of defendants from whom the court predicted Vicky would recover ); *United States v. Hernandez*, 2:11-CR-00026-GEB, 2014 WL 2930798, at *10 (E.D. Cal. June 26, 2014) (dividing Vicky's general losses by 457, the number of standing restitution orders for Vicky at that time).

*(b) Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses*

This factor is especially difficult to predict because of the proliferation of Vicky's images and videos. Confronted with a restitution case involving Vicky post-*Paroline*, the United States District Court for the Eastern District of California declined to apply this optional factor. *United States v. Watkins*, 2:13-CR-00268 LKK AC, 2014 WL 3966381, at *7 (E.D. Cal. Aug. 13, 2014). Similarly, The United States District Court for the Eastern District of Michigan declined to apply this factor because it viewed it as "incredibly speculative." *Reynolds*, 2014 WL 4187936, at *6. This Court also declines to apply this factor under the circumstances of this case.

*(c) Any available and reasonably reliable estimate of the broader number of offenders involved*

This factor is substantially similar to factor (b) and is difficult to evalute under the facts of this case. The Court declines to apply this factor.

*(d) Whether Mr. McIntosh reproduced or distributed images of Vicky*

There is no evidence establishing by a preponderance of the evidence that Mr. McIntosh reproduced or distributed images of Vicky. Accordingly, the restitution award is not increased based on this factor.

11

*(e) Whether Mr. McIntosh had any connection to the initial production of the images*

It is undisputed that there is no evidence to indicate Mr. McIntosh had any connection to the initial production of the images of Vicky. Accordingly, this Court will not increase the restitution award based on this factor.

*(f) Number of images of Vicky Mr. McIntosh possessed*

The Government asserts that Mr. McIntosh possessed fifty-one picture images and ninety-eight videos of Vicky. *Cf. Reynolds*, 2014 WL 4187936 (defendant had nineteen images of Vicky; no videos of Vicky referenced); *Watkins*, 2014 WL 3966381, at *1-4 (defendant had 500 videos and 220 images total but there was no evidence presented of how many were attributed to Vicky); *Hernandez*, 2014 WL 2930798 (defendant had 450 images and 250 videos, but only one video attributed to Vicky). This Court finds that an increase in the restitution award based on this factor is proper.

*(g) Other facts relevant to Mr. McIntosh's relative causal role*

Like the Eastern District of Michigan, this Court "concludes that it is appropriate to consider the nature of the images of the victims that [Mr. McIntosh] possessed in determining appropriate restitution awards because the victims will suffer more severe trauma from the continued trafficking of extremely graphic/sadistic images than they would from the trafficking of other images." *Reynolds*, 2014 WL 4187936, at *7. The Government noted that one of the Vicky images qualified as sadistic, masochistic or other depictions of violence. The restitution award is increased based upon this factor.

B. RESTITUTION AWARD

Given this analysis, the Court finds that a restitution award to Vicky in the amount of $14,500.00 is appropriate. This award is neither severe nor nominal. *Cf. Reynolds*, 2014 WL

4187936 (awarding $15,500.00 award for nineteen images and no videos of Vicky); *Watkins*, 2014 WL 3966381 (awarding $2,191.74 where no evidence was presented of how many Vicky images and videos the defendant received); *Hernandez*, 2014 WL 2930798 (awarding $2,282.86 where one video of Vicky was found on the defendant's computer); *see also United States v. Lindauer*, 3:10-CR-00023, 2011 WL 1225992 (W.D. Va. Mar. 30, 2011) (awarding $5,448.75 to Vicky where the defendant transported Vicky's images and created a program entitled "Forvicky"); *Hicks*, 2009 WL 4110260 (awarding $3,000.00 plus attorney's fees to Vicky ($3,525.00) where the defendant attempted receipt of two videos and two images of Vicky);

The Clerk is **REQUESTED** to send a certified copy of this memorandum opinion and the accompanying order to Mr. McIntosh and all counsel of record.

/s/ Arenda L. Wright Allen
Arenda L. Wright Allen
United States District Judge

October 22nd, 2014
Norfolk, Virginia